250

Margaret Elaine BAIRD *v.* STATE of Arkansas

CR 79-86                                          583 S.W. 2d 60

Opinion delivered July 2, 1979
(Division II)

*Charles E. Hanks,* for appellant.

*Steve Clark,* Atty. Gen., by: *Catherine Anderson,* Asst. Atty. Gen., for appellee.

FRANK HOLT, Justice. Appellant was charged with "overchecking" or giving a $69.71 check without sufficient bank funds. Ark. Stat. Ann. § 67-720 (Supp. 1977). The jury found her not guilty by reason of a mental disease or defect. About a week later, pursuant to Ark. Stat. Ann. § 41-612 (1) (Repl. 1977), the court conducted a post-acquittal hearing and found that appellant was not then affected by mental disease or defect and did not present a danger to herself or to another person or to the property of others. The court discharged appellant from custody with respect to this case. However, since there were numerous outstanding local felony warrants for the same offense against appellant, she was ordered delivered to the local sheriff. Appellant asserts that the court erred in discharging her rather than ordering her committed to the custody of the director of the State Hospital to be placed in an appropriate institution. This is an issue of first impression.

§ 41-612 provides that when a defendant is acquitted on the ground of a mental disease or defect, the court shall order her committed to the Director of the State Hospital if the court finds the defendant is affected by mental disease or defect and presents a risk of danger to himself or to the person or property of others. If the court finds the defendant is affected by mental disease or defect and, however, no longer presents a danger to himself or the person or property of others, it shall order him discharged or released on such conditions as the court deems appropriate. The court may base

its findings on the psychiatric report submitted prior to trial pursuant to § 41-605, the medical evidence presented at trial, or medical evidence submitted at a separate post-acquittal hearing. Whatever the basis for the court's findings, the burden is upon the state to prove, by a preponderance of the evidence, that the defendant should be either committed or conditionally released. The Commission, in drafting this statute, rejected the suggestion that all persons found not guilty by reason of mental illness should be hospitalized, if at all, under normal civil commitment laws. Commentary, Ark. Stat. Ann. § 41-612 (Repl. 1977). Here at the post-acquittal hearing, appellant did not resist commitment. To the contrary, she sought the assistance of the court, urging it to commit her for her own good.

Dr. Jenkins, the state's witness testified at trial that he diagnosed appellant as having a hysterical personality disorder. He stated that a personality disorder is a disorder "in which one's general functioning is beyond the realm of normality and it's a life-long kind of pattern . . ." In his opinion appellant has the capacity to conform her acts to the requirements of the law, and she appreciates the criminality of her conduct. However, when faced with a crisis situation, her judgment goes totally "kaput." Her mental defect is certainly contributory. He recognized that appellant has a long-standing history of psychiatric difficulties which contribute to her behavior.

Dr. Finch, a defense witness, testified that he diagnosed appellant as psychoneurotic with severe chronic depression, self-destructive acting-out behavior, some obsessive compulsive component, and a great deal of anxiety. Psychoneurosis is a mental disease. He felt that, although appellant could appreciate the criminality of her behavior, the particular crime involved here was a result of her neurosis or mental disease. He repeatedly stated that appellant was "crying for help." She had attempted suicide 3 times. However, he indicated that she had, in his opinion, two conflicting traits since she was a teenager; she has a very low self-esteem so that she seeks punishment and cries out for help at the same time. He also stated that imprisonment would not be of any help in the treatment of her illness unless she receiv-

ed psychiatric treatment. It is undisputed that appellant has intermittently been under psychiatric care during the past 5 years.

The court, following the post-acquittal proceeding, stated that "the problem in this case arises from the fact that the jury, in the Court's mind, made a mistake, because both doctors at the trial testified that she was not psychotic, that she did understand right from wrong . . . ." We observe this is not the statutory test. The test is whether appellant was suffering from a mental disease or defect and is dangerous to herself or others or their property. Both psychiatrists testified that appellant suffered from psychoneurosis or a personality disorder which impairs her normal functioning in society. In addition Dr. Finch stated that she evinced severe depression and self-destructive behavior. Her low self-esteem caused her to seek out punishment, yet she repeatedly cried out for help. As indicated, on 3 occasions she has attempted suicide.

In the circumstances, we hold that the evidence preponderates in showing that appellant is suffering from a mental disease, at least to the degree that she is dangerous to herself. The judgment is reversed and the cause remanded with instructions to commit appellant into the custody of the Director of the State Hospital.

We agree: HARRIS, C.J., and FOGLEMAN and PURTLE, JJ.