Carlyle SCHOCK *v.* Dr. James THOMAS, Commissioner, Mental Health Services, Arkansas State Hospital

81-92                                    625 S.W. 2d 521

Supreme Court of Arkansas
Opinion delivered December 21, 1981

494

*Griffin J. Stockley* and *Marsha Yowell,* Central Arkansas Legal Services, for appellant.

*Steve Clark,* Atty. Gen., by: *Nelwyn L. Davis,* Asst. Atty. Gen., for appellee.

STEELE HAYS, Justice. Petitioner seeks his release from the Arkansas State Hospital by writ of habeas corpus from the Pulaski Chancery Court. Having been found incapable of assisting in his own defense, he was committed by the Union Circuit Court on July 29, 1980, and at the same time acquitted of charges of sexual abuse because of mental disease. The commitment found petitioner to be a danger to himself or to other persons or property.

Appellant's petition for habeas corpus was filed on March 13, 1981, some eight months after his commitment. the chancellor denied the petition, holding that the order of commitment was regular on its face and the circuit court had jurisdiction pursuant to Ark. Stat. Ann. §§ 41-601 through 41-607 (Repl. 1977). Appellant argues three points for reversal: (I) The order of commitment by the Union Circuit Court violates Article 7, § 34, of the Arkansas Constitution (Amendment 24); (II) appellant's confinement is a denial of

due process guaranteed by the Fourteenth Amendment to the United States Constitution and Article 2, § 8, of the Arkansas Constitution; and (III) is a denial of the equal protection clause of the Fourteenth Amendment.

I

We have dealt with the exact procedural issue presented by this case in three previous instances: *Baker* v. *Young,* 121 Ark. 537, 182 S.W. 239 (1915); *Stover* v. *Hamilton,* 270 Ark. 310, 604 S.W. 2d 934 (1980); and quite recently in *Mannix* v. *State,* 273 Ark. 492, 621 S.W. 2d 222 (1981).

In *Baker,* we refused a writ of habeas corpus to a patient confined in the State Hospital by an order of commitment from the Franklin Circuit Court. The patient, Baker, had been tried earlier for murder and acquitted on a plea of insanity. The chancellor sustained the state's demurrer to the petition over Baker's contention that the commitment order was void because the circuit court had no jurisdiction under Article 7, § 34, of the Arkansas Constitution, which gave probate courts "exclusive original jurisdiction in matters relative to . . . persons of unsound mind and their estates. . . . " In *Baker* the court examined existing criminal commitment statutes[1] dealing with commitment to the State Hospital by circuit judges of persons who had either been acquitted of criminal charges because of insanity or found to be incapable of assisting in their defense. Section 4206 of Kirby's Digest provided that persons so committed by circuit judges should be kept until "restored to reason," and section 4207 provided that when restored they would be remanded to the sheriff of the county where such proceedings were pending to be held until admitted to bail or otherwise discharged. The court said:

> The jurisdiction of the circuit courts to pass on the question of the sanity of one under indictment for crime arises as a necessary incident to the enforcement of the criminal laws. There is not the slightest reason to believe the framers of the constitution meant, by the

---

[1]Kirby's Digest, §§ 4204, 4206 and 4207, enacted in 1893.

language giving exclusive jurisdiction to probate courts over the persons and estates of persons of unsound mind, to take away the power of the circuit courts to determine the question of the sanity of a person before that court on a charge for crime. It is equally evident that the lawmakers who framed the Act of 1893 had no intention of invading the jurisdiction of the probate court, but intended to make the provision for a certificate of the circuit judge, where there has been an acquittal on a plea of insanity, merely a means for the admission to the asylum of a person charged with crime. That, too, follows as merely an incident to the criminal jurisdiction of the circuit court. It does not constitute an adjudication of the present insanity of the person charged, but merely *prima facie* evidence of that fact upon which the accused may be held until the question of his sanity can be adjudicated in a court exercising exclusive jurisdiction over such matters. . . . In other words, the [commitment] of the circuit judge only makes a *prima facie* case until there is an adjudication by the probate court, which can be invoked at any time.

The court went on to say that the commitment procedures by circuit judges were not an invasion of the exclusive jurisdiction conferred on probate courts and that the remedy of a person confined under such orders was to apply to the probate court for an adjudication of sanity and to be released if found sane. We regard that reasoning as sound, for there is no conceivable way that circuit courts can be deprived altogether of jurisdiction to deal with insanity matters where they are incidental to criminal charges. The intent behind Article 7, Section 34 cannot be construed to alter the inherent power of the law courts to deal with the defense of insanity.

Sixty-five years later, in *Stover* v. *Hamilton, supra,* we were confronted with virtually the same issue, the only differences being, first, that in *Stover* the defendant had not been tried but, rather, acquitted by the circuit judge without trial (pursuant to Ark. Stat. Ann. § 41-609) on the strength of a clear indication of insanity by the State Hospital report

and, secondly, the statutes[2] were more modern but fundamentally identical to those considered in *Baker*. At first glance, *Stover* and *Baker* appear to reach opposite results. In *Baker* we affirmed the chancellor's denial of a writ of habeas corpus, whereas in *Stover* we reversed, with three justices dissenting. But the difference is more of form than of substance, for effectually the cases are not inconsistent: both agree that the circuit court is not lacking in jurisdiction to commit in the first instance an individual who has been: (1) tried and found not guilty by reason of insanity, (2) acquitted without trial because of mental illness, or (3) found unable by reason of mental illness to assist in his defense but without dismissal of the charges. The same result was reached in *Beard* v. *State*, 266 Ark. 250, 583 S.W. 2d 60 (1979), although the issue of jurisdiction of the circuit court was not raised. Both *Stover* and *Baker* hold that aside from the *initial* circuit court commitment, jurisdiction belongs to probate court and that either the State Hospital or the individual can initiate civil proceedings to have his sanity adjudged. In either case, jurisdiction lies in the probate court. The only factual distinction between *Stover* and the case at bar is that Stover's petition for habeas corpus was filed more than a year after his commitment, whereas here only eight months had elapsed.

*Stover* goes a step farther than *Baker* and states that under *Jackson* v. *Indiana*, 406 U.S. 715 (1972), an individual cannot be held longer than one year under an initial commitment from circuit court and we conclude that it was on that basis that the majority in *Stover* reversed the chancellor's denial of habeas corpus. It follows that if the individual has not had an adjudication of his sanity in probate court on his own petition or upon proceedings initiated by the State Hospital within one year from the original commitment he is entitled to be released in accordance with the notice requirements of § 41-613, or, if need be, by a writ of habeas corpus.

In *Baker*, the individual was instructed to apply to probate court for an adjudication of his sanity, whereas in

---

[2]Ark. Stat. Ann. §§ 41-601 et seq., enacted in 1975.

*Stover* the case was remanded to the Pulaski Chancery Court with directions to order the Director of the State Hospital to determine whether petitioner was a danger to himself or to the person or property of others, and if so, to institute civil commitment proceedings in probate court pursuant to § 59-408, otherwise to notify the Franklin Circuit Court of its intention to release him. That same procedure is appropriate in this case and we so hold with the added proviso that barring either action within a reasonable time the chancellor should issue a writ of habeas corpus.

The State has asked, as it did in *Mannix* v. *State,* that we overrule the *Stover* decision. But we declined that course less than three months ago in considering the issue in *Mannix* and we remain unwilling to take that step, notwithstanding the problems that arise. But we believe *Baker* and *Stover* do not conflict in substance, only in procedure in the method of dealing with habeas corpus petitions — *Baker* following the traditional view of our cases that if the court has jurisdiction and the order is regular on its face, then habeas corpus should not issue. *Mitchell* v. *State,* 233 Ark. 578, 346 S.W. 2d 201 (1961); *Ex Parte O'Neal,* 191 Ark. 696, 87 S.W. 2d 401 (1935). By that standard, *Stover* by its own language might just as appropriately have denied the writ and still remanded the case to the chancellor with the instructions it gave. Too, Stover, the petitioner, had been confined in excess of a year and in holding that a writ of habeas corpus should have issued, the majority may have been influenced by a construction of *Jackson* v. *Indiana, supra,* as mandating civil commitment proceedings within *one year* from the original criminal commitment, concluding that circuit court jurisdiction ended with the lapse of one year. However, no specific time limit is stated in *Jackson,* only that the commitment cannot be *indefinite.* We conclude that the circuit court has jurisdiction at the initial stage to make a valid commitment to the State Hospital of persons found not guilty by reason of insanity or to be incapable of assisting in their defense, but that subsequent proceedings must be under the jurisdiction of probate courts and when no proceedings are commenced within one year circuit court jurisdiction ends.

## II

Appellant argues that his confinement under the order of commitment of July 29, 1980, is a denial of due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution and Article 2, § 8, of the Arkansas Constitution. He contends that *Stover* found an unconstitutional application of the criminal commitment statutes, §§ 41-612 and 41-613. But the opinion in *Stover* did not consider constitutional questions, it plainly stated that constitutionality was not challenged and the deprivation of due process implied by *Stover* and condemned in *Jackson* v. *Indiana* lies not in the commitment per se, but in an indefinite commitment dependent on restoration of sanity. *Stover* remedied that flaw by requiring either civil commitment proceedings or outright release within a reasonable time, not longer than a year.

In *Jackson* the United States Supreme Court found that Indiana's indefinite commitment of a criminal defendant *solely* on account of his incompetency to stand trial failed to square with due process. That conclusion was affected by several distinguishing elements: Jackson had been confined for 3½ years under a commitment that he be held until found to be sane, coupled with strong medical evidence that he would never be considered "sane." But in *Jackson* the court was invalidating an indefinite commitment based on incompetency alone, and recognized that where the commitment is based on a finding that the individual is dangerous, then due process is not impaired. *Greenwood* v. *United States*, 350 U.S. 366 (1955). The court took note that the cases following *Greenwood* have imposed a "rule of reasonableness " on federal criminal commitment statutes requiring that one committed thereunder can be held only for a reasonable period of time if the chances of improvement are slight, while expressly *excluding* cases in which there is a finding of dangerousness. Similarly, *Stover* pointed out that confinement was justifiable because of a mental illness which rendered him dangerous, rather than because of pending criminal charges. For other cases holding that a commitment based on a finding of dangerousness is not a denial of due process, see *Powell* v. *Florida*, 579 F. 2d 324

(1978), *Bolton* v. *Harris,* 395 F. 2d 642 (1968); and *Specht* v. *Patterson,* 386 U.S. 605 (1967).

Before leaving the issue of due process, it was argued orally, though not in the briefs, that no evidence was presented to the circuit court that appellant was a danger to himself or to others. Because we are remanding the case to allow for further proceedings on appellant's present mental state, we do not reach the issue of whether this point is properly before us, except to note that an insanity acquittee is entitled to a hearing on the issue of his mental state at the time of commitment, to be represented by counsel and to confront and cross-examine witnesses. Anything less is a denial of due process. The fact that he interposes insanity as a defense, or that the jury finds him not guilty by reason of insanity, does not alter that fundamental right. *Powell* v. *Florida, supra.*

## III

Appellant's remaining assignment of error is that his confinement is a denial of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. The argument is that appellant's commitment pursuant to Ark. Stat. Ann. § 41-612 (Repl. 1977) is a denial of equal protection in that he was never tried and has no criminal charges pending against him, whereas other persons in that class are committed through civil involuntary commitment statutes. Ark. Stat. Ann. §§ 59-1401 et seq. (Repl. 1977). Appellant points to other differences: that under § 41-612 the burden of proof is less onerous than under § 59-1401, being simply a preponderance of the evidence on the one hand as opposed to clear and convincing evidence on the other; that "risk of danger" is not defined under the criminal commitment proceedings, whereas under civil commitment proceedings the terms "homocidal, suicidal or gravely disabled" are defined; that danger to property is of no concern under the civil statutes; that patients under civil commitment are guaranteed 28 patients' rights, including access to money and to telephone for confidential calls, daily visitations, to send and receive unopened mail, to have private religious visits, as well as other rights, none of which

are guaranteed to those committed under § 41-612. In short, appellant insists that, like *Jackson,* he has been subjected to a more lenient commitment standard, is subject to a custodial disparity and is held to a more stringent release standard that those generally applied to others not committed under criminal statutes.

The issue, however, is not whether there are differences, but whether there is a rational basis for such differences. The equal protection clause does not require that all persons be dealt with identically; it only requires that classifications rest on real and not on feigned differences, that the distinctions have *some* relevance to the purpose for which the classification is made, and that the different treatment be not so disparate as to be arbitrary. *United States* v. *Ecker,* 543 F. 2d 178 (1976); *Walters* v. *City of St. Louis,* 347 U.S. 231 (1954); *Skinner* v. *Oklahoma,* 316 U.S. 535 (1942).

Appellant argues that no distinction can be drawn between those who, like appellant, have been acquitted of a crime and those who have never been charged with a crime. But an acquittal due to an inability to assist in one's defense does not carry an inference of exoneration and does not imply that no offense has occurred. When an accused is sufficiently linked with conduct that sustains a finding of dangerousness, his commitment by a circuit court in connection with criminal charges provides a rational distinction from the commitment procedures followed in other cases. Hence, the difference is not arbitrary and not prohibited by the Fourteenth Amendment. The answer entails a balancing of individual rights against societal rights and in doing so it cannot be ignored that conduct harmful to society has occurred. A literal interpretation of the words, "it is as if no crime has been committed," was not intended by *Stover.* Such a conclusion would give undue weight to appellant's right to liberty at the expense of society's right to be secure. To equate an acquittal because of mental illness with a presumptive right to identical treatment with those whose mental illness produces no criminal manifestations fails to give due regard to the protection of society.[3]

---

[3]Both sides of the issue are discussed in depth in "Incompetency," 81 Harv. L. Rev. 454, and "Commitment Following Acquittal by Reason of Insanity and Equal Protection of the Laws," 116 Pa. L. Rev. 924.

Appellant cites us to *Baxstrom* v. *Herold*, 383 U.S. 107 (1966). Baxstrom had completed a 2½ year sentence for second degree assault but on the day he was scheduled to be released he was transferred to the State Hospital and denied a review *de novo* by a jury of his adjudication of insanity guaranteed under the laws of New York. The Supreme Court held that where the state had provided a substantial review procedure in the form of a jury trial in insanity cases and had made it generally available it could not arbitrarily withhold it from some. That holding is sound, but has little bearing on this case. Our law makes no provision for jury trials in insanity cases and whether the sanity hearing is conducted by circuit court or probate court is constitutionally inconsequential.

It is argued that the statute followed by the circuit courts makes the adjudication dependent on whether the individual presents "a danger to himself or to the persons or property of others" while the probate courts are guided by whether the individual is "homicidal, suicidal or gravely ill," a difference we regard as semantic rather than substantive. In either case the judge must find the individual represents a serious risk of harm to himself or to society and no significant disparity exists, certainly not an arbitrary one. Moreover, whether the proceedings are labeled "civil" or "criminal" is immaterial (see *Specht* v. *Patterson, supra*) and they may be different so long as they are not arbitrarily so. *Bolton* v. *Harris, supra*.

Similarly, the fact that the burden of proof under the criminal statutes is by a preponderance of the evidence test, whereas under the civil statutes by a clear and convincing evidence test, is not so substantial as to render the one a violation of the equal protection clause. *Bolton* v. *Harris, supra; United States* v. *Wright*, 511 F. 2d 1311 (1975).

Appellant also argues that there are custodial differences between the two statutes and that greater privileges are afforded those civilly committed. The issue is not really before us as there is no evidence as to how the statutes are applied, but we will observe that the law recognizes the necessity of some dissimilarities in custodial methods and

certainly the nature of the illness and the propensity for harm of each individual must have some correlation to the strictness of the custodial methods. *Cameron* v. *Mullen*, 387 F. 2d 193 (1967); *Baxstrom* v. *Herold, supra*. It would be folly to argue that all individuals committed to the State Hospital are entitled to have equal access to money, private mail, confidential telephone conversations and daily visitors, irrespective of their history and proven tendencies.

We hold to the view that where an individual's propensity to inflict harmful consequences on others by way of criminal conduct is actively demonstrated and proven, that provides the relevant fact which makes a distinction under the law rational. *Walters* v. *City of St. Louis, supra*. Appellee has cited numerous cases recognizing as reasonable the distinction classifying mentally ill persons as either insane or dangerously insane and we find those cases persuasive. *Warren* v. *Harvey*, 632 F. 2d 295 (2d Cir. 1980); *Powell* v. *Florida*, 579 F. 2d 324 (5th Cir. 1978); *United States* v. *Ecker*, 543 F. 2d 178 (D.C. Cir. 1976); *State* v. *Valentine*, 612 P. 2d 117 (Hawaii App. 1980); and cases noted in 50 ALR 3d 144. We find no violation of the equal protection clause.

The case is remanded to the chancellor and in view of the fact that appellant has now been confined more than a year, the chancellor is instructed to order the Director of the State Hospital, within a reasonable time, not to exceed 45 days, to initiate proceedings in the Probate Court of Union County if he considers appellant a present danger to himself or others, whereupon the jurisdiction of the Pulaski Chancery Court in this case terminates. If the director fails to act in that time and fails to release appellant, the chancellor should issue a writ of habeas corpus.

ADKISSON, C.J., and HICKMAN, J., dissent.

DARRELL HICKMAN, Justice, dissenting. I adhere to my view in *Stover* v. *Hamilton*, 270 Ark. 310, 604 S.W. 2d 934 (1980) and *Mannix* v. *State*, 273 Ark. 492, 621 S.W. 2d 222 (1981). I am amazed that the court still fails to find inconsistent statutes unconstitutional. What the court has done in the *Stover* and *Mannix* cases and in this case has

created its own remedy contrary to one which is permitted by Ark. Stat. Ann. § 41-601, et seq. How are the parties to know how to proceed and how is the General Assembly to know how to deal with this problem? In my judgment a mistake was made in *Stover*, elevated to the form of a precedent in *Mannix*, which the majority cannot bring itself to deal with. I respectfully dissent as I have in the past.

ADKISSON, C.J., joins.