Louis HATTISON *v.* STATE of Arkansas

95-563                                              920 S.W.2d 849

Supreme Court of Arkansas
Opinion delivered May 6, 1996

*William R. Simpson, Jr.*, Public Defender, by: *Stephen Wade Parker*, for appellant.

*Winston Bryant,* Att'y Gen., by: *Patricia Van Ausdall,* Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. On March 3 and March 7, 1995, judgments of acquittal of criminal charges were entered in favor of Louis Hattison, the appellant. In each judgment the Circuit Court recited a finding that Mr. Hattison lacked the mental capacity to commit the crime charged. There was a provision in each for automatic commitment of Mr. Hattison to the custody of the Director of the Department of Human Services for examination by a psychologist or psychiatrist in accordance with Ark. Code Ann. § 5-2-314(b) (Supp. 1995). Subsection (d) of the statute states the Director "shall file the psychiatric or psychological report with a probate court ... within thirty (30) days following entry of order of acquittal." The report was not filed until April 7, 1995. Mr. Hattison argues that, due to the late filing of the report, the Probate Court lacked jurisdiction to order continuation of his commitment. We affirm the Probate Court's order denying Mr. Hattison's petition for release.

We agree with Mr. Hattison's first point of appeal which is essentially that the report was late and the Probate Court erred in stating it was timely. We cannot, however, agree with his second point which is that the Probate Court lost jurisdiction as a result of the report being late and thus erred in approving his continued commitment for treatment.

■ When the General Assembly uses the word "shall," we hold the effect is mandatory unless an absurdity would result. *Campbell* v. *State,* 311 Ark. 641, 846 S.W.2d 639 (1993). The 30-day requirement is thus mandatory in the literal sense. The question remains, however, whether the sanction for violation of it is, as Mr. Hattison argues, loss of jurisdiction in the Probate Court to decide whether continuation of his commitment is justified. The statute does not address any sanction to be employed, and Mr. Hattison cites no case suggesting it was the General Assembly's intent to deprive the Probate Court of jurisdiction should the report be untimely.

In *Campbell* v. *State, supra,* we held that where a petition for involuntary commitment was not filed within 72 hours of an individual's confinement, as required by the mandatory language of Ark. Code Ann. § 20-47-210, the Probate Court lacked jurisdic-

tion to decide the petition.

■ At first blush, it might seem that the *Campbell* case should control this one; however, there is a significant distinction. Mr. Campbell had not been committed by a court. The State had the burden of proving Mr. Campbell should be committed, and the petition was to be filed for the purpose of initiating that proceeding. Mr. Hattison, on the other hand, has been found lacking in mental capacity sufficient to have committed the crimes with which he was charged. According to § 5-2-314(e), Mr. Hattison now has the burden of proving to the Probate Court that "his release would not create a substantial risk of bodily injury to another person or serious damage to property of another due to a present mental disease or defect." Jurisdiction of the Probate Court was established by the "automatic" order of commitment entered by the Circuit Court.

■ While a commitment cannot be "indefinite," *Schock* v. *Thomas,* 274 Ark. 493, 625 S.W.2d 521 (1981), citing *Jackson* v. *Indiana,* 406 U.S. 715 (1972), we know of no reason to deprive the Probate Court of jurisdiction due to a late psychiatric report. Had that been the intention of the General Assembly, it could easily have so provided. As the Supreme Court of Nebraska stated in *State* v. *Steele,* 399 N.W.2d 267 (Neb. 1987), a case cited by the State that is almost exactly like this one:

> we find no announced penalty in the statute or the case law interpreting the statute for the State's failure to meet the statutory time limits. The appellant gives no support for his contention that the remedy is dismissal and loss of jurisdiction.... We note that no such sanction [as is provided in the speedy trial law] is provided by the statutes governing acquittals on the ground of insanity.

Affirmed.

CORBIN, J., concurs.

DONALD L. CORBIN, Justice concurring. I agree with the majority opinion. I concur only to emphasize two distinctions between this case and *Campbell* v. *State,* 311 Ark. 641, 846 S.W.2d 639 (1993). The first distinction is that these cases involve interpretations of two different statutory provisions: *Campbell* involved an interpretation of Ark. Code Ann. § 20-47-210 (Repl. 1991), which pertains to civil involuntary commitment procedures, while this

case involves an interpretation of Ark. Code Ann. § 5-2-314 (Supp. 1989), which pertains to continued confinement of persons acquitted of criminal wrongdoing on the ground of mental disease or defect. The second distinction lies in the purposes behind each statutory provision.

Section 20-47-210 sets out the necessary steps for immediate confinement of a person suffering from a mental disease or defect to the extent that he or she is a danger to himself or others. Specifically, that section provides not only that a petition must be filed with the probate court within seventy-two hours from the time the person is confined, but also that a hearing must be held to determine if there is probable cause to believe the person has a mental disease or defect, and, if so, to order that an evaluation be done. The purpose behind such statutory safeguards is to insure that persons who do not actually suffer from a mental disease or defect, or who are in no way a danger to themselves or others, are not confined against their will for an indefinite period of time. *See* Ark. Code Ann. § 20-47-201 (Supp. 1989) *Purpose — Policy*.

Section 5-2-314, on the other hand, provides that one acquitted of a crime on the ground of mental disease or defect shall be committed to the custody of the Director of the Department of Human Services for the purpose of further psychological evaluation, following the circuit court's determination that the crime involved injury to another person or serious property damage or a substantial risk of such injury or damage. Arguably, the purpose behind such an automatic confinement is to protect members of our society from being harmed by one who has already demonstrated a propensity to violate the law, as well as to protect that person from harming himself. According to the original legislative commentary to that section, this special hospitalization procedure was created expressly for those persons who have violated the law and would have been punished by our criminal justice system *but for* their suffering from a mental disease or defect. Because of the diverse situations addressed by the two statutes, as well as their different purposes, the time periods for which to file the necessary documents should be interpreted differently.

In *Campbell*, the appellant was held at the state hospital on an emergency basis, but the petition for his involuntary commitment was not filed until five days later. We reversed and dismissed the lower-court proceeding, holding that the seventy-two-hour period

for which to file a petition was mandatory. The reason that provision must be interpreted as mandatory is so that one person may not unilaterally affect the involuntary commitment of another person at his or her whim, without an impartial jurist having first reviewed a valid petition and having conducted a hearing. Were the seventy-two-hour filing requirement *not* interpreted as mandatory, one person—be it a police officer acting on a complaint, a friend or family member with a vendetta, an estranged spouse attempting to secure custody of the children, or any other interested citizen— could unilaterally and arbitrarily affect a virtual imprisonment of another person for an indefinite period of time. The fact that the petition for Mr. Campbell's involuntary commitment was not timely filed violated the very essence of the statutory provision, as that time period is a statutory safeguard that must be strictly observed.

In this case, the circuit court found Mr. Hattison not guilty of violating his probation on the ground that he suffered from a mental disease or defect. Immediately following that ruling, Mr. Hattison was, pursuant to statute, confined to the Arkansas State Hospital by the same circuit court. By that stage of the proceedings, Mr. Hattison had already been evaluated by mental health experts who determined that he was either currently suffering from a mental disease or defect or that he had so suffered at the time the violations of his probation were committed. Mr. Hattison's continued confinement was, therefore, neither arbitrarily nor unilaterally affected.

The essence of section 5-2-314 is to ensure that those persons acquitted of criminal acts on the ground of mental disease or defect are not carelessly released upon society without further evaluation and treatment of their condition. Accordingly, the fact that Dr. Hall's written report was not timely filed did not require an automatic discharge of the appellant, as doing so would defeat the entire legislative purpose behind the law. In other words, unlike the situation which was presented to us in *Campbell*, the timely filing of the doctor's report in this case did not violate the very essence of the statute.

In conclusion, the seventy-two-hour time period for filing a petition and conducting a hearing, as set out in section 20-47-210, must be viewed as a mandatory, built-in safeguard which is necessary to ensure that no person is involuntarily committed without a court having reviewed his or her case. Under the provisions of section 5-2-314, however, there is no need for similar insurance, as

the person committed has already been evaluated as having a mental disease or defect, and his case has already been reviewed by a court. For this reason, that section's thirty-day time period in which to file the necessary written report of the doctor's findings more closely resembles a procedural guideline which must be followed in order to confine a person beyond the initial statutory evaluation period. Accordingly, the decision in this case may be reconciled with that handed down in *Campbell.*