Rick GIBSON *v.* STATE of Arkansas

CA 04–365                                        201 S.W.3d 422

Court of Appeals of Arkansas
Opinion delivered January 19, 2005

*Rachel A. Runnels*, Carroll County Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant Rick Gibson appeals from his involuntary commitment to the Arkansas State Hospital. This case began when Mr. Gibson was charged with third-degree domestic battery, second offense, a Class D felony, which offense allegedly occurred on November 7, 2001. Specifically,

Mr. Gibson was charged with causing physical injury to his wife by striking and kicking her during an argument at their home. Mr. Gibson underwent a mental health examination, and on April 24, 2003, Dr. Michael J. Simon, a forensic psychologist, submitted a report. In his report, Dr. Simon indicated that Mr. Gibson could not remember details of the assault on his wife, but that Mr. Gibson thought it was causally related to his epilepsy, which he has had for more than thirty years. Dr. Simon gave the opinion that while Mr. Gibson was able to appreciate the criminality of his conduct, he was not responsible for his behavior at the time of the alleged crime because he was unable to conform his conduct to the requirements of the law as a result of his seizure disorder.

On July 1, 2003, the parties stipulated to the opinions contained in Dr. Simon's report. Pursuant to the stipulation, the trial court entered a "Judgment of acquittal on the ground of mental disease or defect" on the same day. The judgment contained the following findings and orders:

- The Court finds that at the time of the conduct charged, the Defendant lacked capacity, as the result of mental disease or defect, to conform his conduct to the requirements of law.

- Pursuant to Ark. Code Ann. § 5-2-314(a)(1), the Court hereby makes the finding that the offense involved bodily injury to another person or serious damage to the property of another, or involved substantial risk of such injury or damage, and that the Defendant remains affected by mental disease or defect.

- Pursuant to Ark. Code Ann. § 5-2-314(b), the Defendant is hereby committed to the custody of the Director of the Department of Human Services for an examination by a licensed psychiatrist or psychologist.

- Within thirty days of the entry of this order, the Director of the Department of Human Services shall file said report with the Probate Division of Carroll County Circuit Court, and a hearing shall be had no later than ten days thereafter to determine whether the Defendant shall be conditionally released from the custody of the Department of Human Services.

- Pending his psychological or psychiatric examination, the Defendant shall remain free, conditioned upon his maintaining contact with his attorney and upon his undergoing the examination when scheduled.

&bull; The Carroll County Sheriff's Office is commanded to transport the Defendant Rick Gibson to and from his psychological or psychiatric examination ordered herein.

A hearing was set for August 4, 2003, and at the hearing it was established that the Director of DHS had yet to file a report as ordered. The trial court scheduled another hearing for September 15, 2003, and advised the State's attorney to subpoena the Director of DHS if necessary. At the September 15, 2003, hearing, Mr. Gibson's counsel advised that Mr. Gibson was unable to appear as a result of being held at the Arkansas State Hospital for evaluation. As of that time there had been no written report submitted by DHS, and over appellant's counsel's objection the trial court extended the time for filing what it called a "supplemental report" by thirty days, and another hearing was scheduled for October 20, 2003.

On September 26, 2003, Mr. Gibson's counsel filed a motion to vacate the July 1, 2003, judgment of acquittal. In the motion it was asserted that Mr. Gibson had been confined to the Arkansas State Hospital since August 12, 2003. It was further asserted that no report had yet been filed by the Director of DHS, and that no hearing had been held as required by statute. Mr. Gibson argued that at the time he agreed to entry of the July 1, 2003, order, he could not have reasonably known that he was in jeopardy of indefinite confinement without timely evaluation. As such, Mr. Gibson asked that the judgment of acquittal be vacated, and that he be released from the Arkansas State Hospital.

In a pretrial order filed on October 20, 2003, the trial court denied appellant's motion to vacate "as untimely filed and [for] failure to state legal grounds to vacate the judgment." The order also transferred the case to the probate division of circuit court, and a hearing was held.

At the October 20, 2003, hearing, the trial court reviewed a report filed on October 2, 2003, by Dr. O. Wendell Hall, III, Medical Director of Forensic Services for the DHS. In the report, Dr. Hall asserted that he completed a post-acquittal evaluation of Mr. Gibson and found that Mr. Gibson remained affected by the same mental disorder that led to the judgment of acquittal. Dr. Hall gave the professional opinion that the release of Mr. Gibson would pose a risk to himself or the person or property of others, and stated that evidence of this includes:

- He has minimal insight about his mental illness and needs for treatment.

- He minimizes the seriousness of the charges and still tends to view himself as the victim of others telling him what to do.

- He indicates he has little or no warning that he is about to act in a violent way.

- He has not been fully compliant with taking psychotropic medications on an outpatient basis.

- He has been observed to hit another patient here in response to that patient shaking his hand in a playful way.

- He likely will require long-term supervised placement that can deal with his dementia diagnosis, epilepsy, and treatment needs.

At the hearing, Dr. Hall testified that Mr. Gibson has been on practically every anti-convulsant medication ever made, and yet he still suffers seizure-activity on almost a daily basis. Dr. Hall gave the opinion that with Mr. Gibson's continued seizure disorder that is not controlled, he is going to show a progressive decline in his intellectual functioning and increase in his dementia. Dr. Hall described an incident where another patient reportedly shook Mr. Gibson's hand in a non-aggressive manner, and Mr. Gibson "socked the guy in the face." Dr. Hall indicated that Mr. Gibson has little or no warning before he acts aggressively, and that his release would pose a significant risk to himself or others.

Dr. Charles Horton testified that he has been Mr. Gibson's primary care physician for the past six years. He stated that the various medications that Mr. Gibson takes for his epilepsy cause agitation, impaired memory, anxiety, hostility, and mood changes. Dr. Horton explained that they cannot take Mr. Gibson off of his medications for fear that he might have the more life-threatening, grand mal seizures. Dr. Horton stated that, other than the side effects of the medication, he agreed with Dr. Hall's opinion.

Mr. Gibson testified on his own behalf, and he stated that during the handshake incident the other patient was twisting his arm and that "out of self-defense, I just naturally hit him." Mr. Gibson was unsure of whether he was having a seizure at the time, but did not think that he was. Mr. Gibson maintained that that was

the only violent episode he has had between November 7, 2001, and the October 20, 2003, hearing.

Bonnie Brooks, Mr. Gibson's ex-wife and the victim of the November 7, 2001, attack, also testified on Mr. Gibson's behalf. She stated that, for the most part, Mr. Gibson is very peaceful. She stated that Mr. Gibson can take care of himself and would be better off living by himself instead of around other people. Ms. Brooks stated that she obtained several signatures from people in the community who know Mr. Gibson, have never witnessed any violent episodes, and who believe he should be removed from custody to live on his own. Ms. Brooks acknowledged that Mr. Gibson broke her nose, but testified that "as far as aggression, it's not very often."

Mr. Gibson's mother, Mary Gibson, also testified. She stated that before being taken into custody Mr. Gibson lived near her and helped her around the house. According to Ms. Gibson, Mr. Gibson was "doing the best he had ever, for a long time."

On October 22, 2003, the trial court entered a final order of disposition finding that Mr. Gibson failed to meet his burden of proving by clear and convincing evidence that his release would not create a risk of serious bodily injury to another person or serious damage to property of another due to his mental disease or defect. The trial court further ordered Mr. Gibson to be placed in DHS custody for an indefinite period of time until the Director of the DHS determines that Mr. Gibson has recovered from his mental disease to such an extent that his release would no longer create a substantial risk of bodily injury to other persons or serious damage to the property of another. Mr. Gibson now appeals from the final order of disposition, and challenges the prior orders of the trial court as well.

Arkansas Code Annotated section 5-2-314 (Supp. 2003) is applicable to this case, and provides in pertinent part:

> (a) When a defendant is acquitted on the ground of mental disease or defect, a circuit court shall be required to determine and to include the determination in the order of acquittal one (1) of the following:

> (1) The offense involved bodily injury to another person or serious damage to the property of another or involved a substantial risk of such injury or damage, and that the defendant remains affected by mental disease or defect; or

(2) The offense involved bodily injury to another person or serious damage to the property of another or involved a substantial risk of such injury or damage, and that the defendant is no longer affected by mental disease or defect; or

(3) The offense did not involve bodily injury to another person or serious damage to the property of another nor did it involve substantial risk of such injury or damage, and that the defendant remains affected by mental disease or defect; or

(4) The offense did not involve bodily injury to another person or serious damage to the property of another nor did it involve a substantial risk of such injury or damage, and that the defendant is no longer affected by mental disease or defect.

(b) If the court enters a determination based on subdivision (a)(1) or (3) of this section, the circuit court shall order the defendant committed to the custody of the Director of the Department of Human Services for an examination by a psychiatrist or a licensed psychologist.

(c) If the court enters a determination based on subdivision (a)(2) or (4) of this section, the court shall immediately discharge the defendant.

(d) The director shall file the psychiatric or psychological report with the probate clerk of the circuit court having venue within thirty (30) days following entry of order of acquittal. A hearing shall be conducted by the court and shall take place not later than ten (10) days following the filing of the report with the court.

(e) A person found not guilty on the ground of mental disease or defect of an offense involving bodily injury to another person, or serious damage to the property of another, or involving a substantial risk of such injury or damage has the burden of proving by clear and convincing evidence that his or her release would not create a substantial risk of bodily injury to another person or serious damage to property of another due to a present mental disease or defect. With respect to any other offense, the person has the burden of proof by a preponderance of the evidence.

The current version of this statute differs slightly from that which was in effect when this case began, but in substance the current version is the same as its predecessor.

On appeal, Mr. Gibson first argues that he was wrongfully committed to the Arkansas State Hospital because there was a lack of compliance with Ark. Code Ann. § 5-2-314(d).[1] He asserts that because the judgment of acquittal was entered July 1, 2003, and the DHS Director's report was not filed until October 2, 2003, there was no compliance with the requirement that a report be filed within thirty days of acquittal. Mr. Gibson maintains that he was led to believe he would not be subject to hospitalization while awaiting the hearing, but instead was taken into confinement by DHS on August 12, 2003, where he remained indefinitely. Mr. Gibson contends that without a remedy the statute's time limits are meaningless, and that the statute should protect acquittees from unreasonable delays in administration of their cases. Mr. Gibson argues that the trial court should not have allowed an extension to file the report and that he should have been set at liberty.

Mr. Gibson's first argument fails in light of our supreme court's decision in *Hattison v. State*, 324 Ark. 317, 920 S.W.2d 849 (1996). In that case judgments of acquittal were entered against the appellant pursuant to a finding that he lacked the requisite mental capacity to commit the crimes, and the psychiatric or psychological report was not filed until more than thirty days after each judgment was filed in violation of Ark. Code Ann. § 5-2-314(d). The appellant argued that, due to the late filing of the report, the probate court lacked jurisdiction to continue his commitment. However, the supreme court rejected appellant's argument, and wrote:

> When the General Assembly uses the word "shall," we hold the effect is mandatory unless an absurdity would result. *Campbell v. State*, 311 Ark. 641, 846 S.W.2d 639 (1993). The 30-day requirement is thus mandatory in the literal sense. The question remains, however, whether the sanction for violation of it is, as Mr. Harrison argues, loss of jurisdiction in the probate Court to decide whether continuation of his commitment is justified. The statute does not address any sanction to be employed, and Mr. Hattison cites no case

[1] Mr. Gibson submits that, even if he has been released from confinement during the pendency of this appeal, this issue and this appeal is nonetheless not moot because it addresses an issue of public interest, tends to evade review, and is capable of repetition. Because nothing in the record indicates that Mr. Gibson has in fact been released from DHS custody, we agree that this appeal is not moot.

suggesting it was the General Assembly's intent to deprive the Probate Court of jurisdiction should the report be untimely.

. . . .

Mr. Hattison . . . has been found lacking in mental capacity sufficient to have committed the crimes with which he was charged. According to § 5-2-314(e), Mr. Hattison now has the burden of proving to the Probate Court that "his release would not create a substantial risk of bodily injury to another person or serious damage to property of another due to a present mental disease or defect." Jurisdiction of the Probate Court was established by the "automatic" order of commitment entered by the Circuit Court.

While a commitment cannot be "indefinite," *Schock v. Thomas,* 274 Ark. 493, 625 S.W.2d 521 (1981), citing *Jackson v. Indiana,* 406 U.S. 715 (1972), we know of no reason to deprive the Probate Court of jurisdiction due to a late psychiatric report. Had that been the intention of the General Assembly, it could easily have so provided[.]

*Hattison v. State,* 324 Ark. at 318-19, 920 S.W.2d at 850.

■■ Pursuant to our supreme court's precedent in *Hattison v. State, supra,* we hold that, despite the untimeliness of the DHS report, this did not compromise the trial court's authority to impose continued DHS commitment. While Mr. Gibson suggests that the *Hattison* opinion is flawed and should be overruled, it is well settled that this court is bound by the decisions of the Arkansas Supreme Court. *See Gause v. Shelter General Ins.,* 81 Ark. App. 133, 98 S.W.3d 854 (2003).

Mr. Gibson next argues that the trial court erred when it found that he failed to prove by clear and convincing evidence that he did not pose a risk of bodily harm to others or property, as was his burden under Ark. Code Ann. § 5-2-314(e). Under this point, Mr. Gibson posits that, because he had the burden of proof, the trial court erred in permitting the State to present its evidence first. Beyond that, Mr. Gibson asserts that the trial court clearly erred in light of his own testimony, the testimony of his ex-wife, and the testimony of his mother. Mr. Gibson notes that while Dr. Hall identified an incident where he struck another patient, Dr. Hall did not witness the event, and Mr. Gibson testified that it was a case of self defense.

■ We review probate proceedings *de novo,* and the decision of the court will not be disturbed unless clearly erroneous. *George v. State,* 80 Ark. App. 185, 92 S.W.3d 692 (2002). A finding

is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Kemp v. State*, 348 Ark. 750, 74 S.W.3d 224 (2002). In making our review, we give due regard to the superior position and opportunity of the circuit court, sitting in probate, to determine the credibility of the witnesses. *Manning v. State*, 76 Ark. App. 91, 61 S.W.3d 910 (2001).

■ Giving due regard to the trial court to judge the credibility of witnesses, we cannot say the trial court clearly erred in finding that Mr. Gibson failed in his burden of proving, by clear and convincing evidence, that his release would not create a substantial risk of bodily injury to another person due to appellant's present mental defect. We note that Mr. Gibson did not object below to the order of proof, and at any rate has failed to demonstrate any resulting prejudice. Both Drs. Hall and Horton agreed that, due to Mr. Gibson's seizure condition and current medication, he remains at risk of harming others. The trial court credited the medical opinion over the testimony of appellant's witnesses, as it was entitled to do, and committed no error in continuing Mr. Gibson's commitment with DHS.

Mr. Gibson's remaining argument is that the trial court erred in committing him to the custody of DHS for an indefinite period of time. He argues that the language used in the trial court's final order puts him in the untenable situation that his release can only be determined by the DHS. Mr. Gibson contends that this has resulted in an unreasonable deprivation of his liberty. Under this point, Mr. Gibson also asserts that the trial court's decision was in part based on the improper consideration that his release would result in a danger to himself. Mr. Gibson also cites Ark. Code Ann. § 20-47-202(10)(B)(i) (Repl. 2001), which provides that "mental illness" does not include impairment caused solely by epilepsy.

■ Mr. Gibson's final argument is without merit. In contrast to what appellant argues, his confinement is not solely dependent on a DHS determination that he is fit for release. While it is true that an acquittee may be released upon recommendation of the DHS, *see* Ark. Code Ann. § 5-2-315(a)(1) (Repl. 1997), the acquittee himself may apply for a release pursuant to Ark. Code Ann. § 5-2-315(c)(1) (Repl. 1997), which provides:

> Regardless of whether the Director of the Department of Human Services or his designee has filed an application pursuant to the provisions of subsection (a) of this section, the acquittee, acquittee's counsel, or his legal guardian may, at any time during such a person's commitment, file with the court that ordered the commitment a motion for a hearing to determine whether the person should be discharged from such facility, but no such motion may be filed more often than once every one hundred eighty (180) days.

This remedy will be available to Mr. Gibson notwithstanding the fact that it was not referenced in the final disposition order. Thus, while Mr. Gibson was committed for an indefinite period, he will be eligible for release upon demonstration that he has recovered to the extent that his release would no longer create a substantial risk of bodily injury to another person or serious damage to property.

We also note that, while there was evidence that Mr. Gibson's release would result in a danger to himself, this was not recited in the trial court's order. The final order of disposition is based only on the trial court's finding that Mr. Gibson failed to prove by clear and convincing evidence that his release would not create a risk of serious bodily injury to another person or serious property damage as prescribed by Ark. Code Ann. § 5-2-314(e).

█ Finally, we hold that Mr. Gibson's reliance on Ark. Code Ann. § 20-47-202(10)(B)(i) is misplaced. This authority applies to an entirely different statutory scheme and, at any rate, Mr. Gibson's mental illness is not solely caused by epilepsy, but rather by a combination of epilepsy and his medications. Moreover, Mr. Gibson stipulated to a mental disease or defect, which was the basis of his acquittal of a felony charge, and he cannot now be heard to argue that he suffers no mental illness.

We have reviewed each of Mr. Gibson's arguments on appeal and have concluded that none form the basis for reversal. Therefore, we affirm the final order of disposition committing Mr. Gibson to DHS custody.

Affirmed.

GLADWIN and NEAL, JJ., agree.